ANTHONY J. LORE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lore v. Commissioner
Docket No. 36754-86
United States Tax Court
T.C. Memo 1990-56; 1990 Tax Ct. Memo LEXIS 56; 58 T.C.M. (CCH) 1334; T.C.M. (RIA) 90056; February 7, 1990; As corrected February 14, 1990 Jack Elon Hildreth, Jr., for the petitioner. Thomas Travers, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax for the taxable year 1983 in the amount of $ 10,953. Respondent also determined additions to tax pursuant to sections 6653(a)(1) [1] and 6653(a)(2) in the amounts of $ 547.65 and 50 percent of the interest due on $ 10,953, respectively, and an addition to tax pursuant to section 6661 in the amount of $ 1,095.30. After concessions, the only issues remaining are whether petitioner is liable for any of the additions to tax. FINDINGS OF *57 FACT Some of the facts have been stipulated and are so found. Petitioner resided at Seal Beach, California at the time his petition was filed in this case. In 1983, petitioner was employed as branch manager for Teneca Company, U.S.A. He had been employed in marketing for at least 7 years. In 1983, petitioner invested in a medical equipment leasing program being sold under the name Holistic Profiles, Inc. ("HPI"). HPI was to supply equipment to clinics that provided health care. Ray W. Moss incorporated HPI. Moss enlisted the services of Tony Dave Ortega in formulating the HPI program. Ortega created Amada Financial Services ("Amada") to provide the accounting services for the leasing program. Ortega was a promoter and salesman of the HPI leasing program. Petitioner heard about HPI and Ortega from his girlfriend, later his wife, Dana Morgan Lore. Petitioner met with Ortega in December of 1983. Ortega gave petitioner a brochure describing the HPI program. The HPI materials stated that HPI had agreed to lease furnishings, signs, computers, and equipment to 100 holistic clinics throughout the United States. The HPI program offered the furnishings, signs, computers, and *58 equipment for sale to investors to lease to the clinics. The brochure emphasized the tax benefits of the investment. The materials also discussed the potential for "income" both during the lease term and at the sale of the equipment at the end of the lease term. The "income" that the materials promised was a "cash flow" that was calculated by adding depreciation and interest expense back to a negative income figure and subtracting the investors' loan payments. The materials did not present any projections for a residual value. Petitioner agreed to purchase "Medical and Dental Equipment" from Amada for $ 45,000 in a Purchase and Security Agreement (the "Purchase Agreement") dated December 30, 1983. Petitioner agreed to pay a 10 percent cash down payment, $ 4,500, and signed a promissory note for the remaining 90 percent of the purchase price, $ 40,500. The note provided for equal monthly payments over a 5-year period beginning on January 1, 1984. Petitioner did not negotiate the price of the equipment. The equipment was not identified in the Purchase Agreement; the spaces for "Make/Trade Name" and "Identification Number(s), (if any)" were left blank. In the Purchase Agreement, *59 petitioner also agreed to insure the equipment. Petitioner agreed to purchase an interest in items identified as "Fisher 4450" and " G. E. 1487" on a Financing Statement executed 2 days prior to the Purchase Agreement. Petitioner assumed the items on the Financing Statement were components of electroneurograph equipment. Petitioner believed he was buying a percentage ownership in electroneurograph equipment. He did not know what percentage interest he had purportedly bought. Petitioner also did not know or ask who owned other interests in the equipment. Petitioner did not insure the equipment. At the time petitioner filed his 1983 return, he had not paid any money for the HPI investment. Petitioner never made any payments on the promissory note. Ortega prepared petitioner's 1983 Federal income tax return. Petitioner claimed a $ 13,519 business loss from his HPI investment on Schedule C of his 1983 return. Petitioner claimed a basis in the HPI activity of $ 57,310 for purposes of computing depreciation and investment tax credit. Petitioner deducted $ 13,597 of depreciation on his Schedule C. Petitioner claimed investment tax credits of $ 5,731, and used $ 3,791 to offset *60 his 1983 tax liability. Petitioner carried back the unused credits to his 1981 tax year. Petitioner also reported rental income of $ 4,230, before deductions, from the HPI investment on his 1983 Schedule C. Petitioner did not, however, receive or request any documentation to substantiate the rental income. He relied only on the representations of Ortega. On March 28, 1984, petitioner paid Amada $ 450 cash, which was 10 percent of the total cash down payment required by the Purchase Agreement. Petitioner signed a promissory note for $ 4,050, the remainder of the down payment. Petitioner received a refund as a result of the deductions and credits from the HPI investment in the amount of $ 8,158 for 1983. Petitioner received a refund in the amount of $ 1,392 for 1981 from the HPI credit carrybacks. The refund checks were mailed to petitioner at Ortega's business address. After he received the refund checks, petitioner paid off the $ 4,050 promissory note which represented the remainder of the 10 percent down payment. Petitioner believed that the down payment would be his entire investment in the HPI program because the lease payments were to cover the note payments. Neither the *61 equipment that petitioner assumed to be the subject of petitioner's agreement nor substitute equipment was purchased or placed in service. Petitioner never investigated the existence or placement of equipment. Petitioner did not enter into a lease with respect to the equipment or authorize anyone else to enter into a lease on his behalf. Petitioner did not keep any books or records of his investment in HPI. In late 1984, Ortega informed investors that the equipment did not exist. Petitioner obtained a Confession of Judgment against Ortega and Amada for taking money from petitioner in the investment scheme. Petitioner received partial restitution from Ortega. Petitioner purchased a condominium in 1979 for $ 58,000. Prior to purchasing the condominium, petitioner inspected the property, looked at several other condominiums, negotiated the price downward from the original asking price, and had a title search done on the property. Petitioner received a deed to the property when he purchased the condominium. He maintained records of the business rental use of the property in 1983 when he converted it into rental property. OPINION Petitioner claimed deductions and credits *62 from a medical equipment leasing program that he invested in during the year at issue. Petitioner conceded the deficiency at issue after discovering that the equipment was not in existence. The only issue, therefore, is whether he is liable for the additions to tax. Petitioner has the burden of proof with regard to each of these additions to tax. Rule 142(a), Tax Court Rules of Practice and Procedure.
The first issue is whether petitioner is liable for the additions to tax pursuant to sections 6653(a)(1) and 6653(a)(2). Section 6653(a)(1) provides for an addition to tax equal to five percent of an underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes a further addition to tax equal to 50 percent of the interest payable on that portion of the underpayment of the tax attributable to negligence or intentional disregard of rules or regulations. For purposes of section 6653(a), negligence is defined as lack of due care or failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner argues *63 that he was a victim of fraud and theft and that he relied on an unscrupulous promoter who concealed the nonexistence of the equipment, lied to him, and prepared fraudulent tax returns without petitioner's knowledge. Petitioner, however, did not independently investigate the merits of the HPI investment. See Beck v. Commissioner, 85 T.C. 557 (1985). Instead, he relied only on Ortega, the program's promoter and salesman, and Ortega's associates. Petitioner did not verify or attempt to verify the existence of the equipment. Further, he did not receive or request income and expense reports for the amounts he reported on his return in respect of leased equipment. Petitioner also did not keep any books or records of his investment in HPI. In contrast, when petitioner purchased a condominium in 1979, he inspected the property, negotiated the price, had the title to the property searched, and received a deed to the property. When petitioner converted the condominium to rental property in 1983, he kept adequate books and records of the property. Petitioner entered into the purchase agreement on December 30, 1983, a Friday, 2 days before the end of the year. He claimed *64 a depreciation deduction of $ 13,597, calculated on a basis of $ 57,310, even though his stated purchase price for the equipment was only $ 45,000. Other discrepancies in the promotional materials should have alerted petitioner to the doubtful nature of the investment's tax consequences. Importantly, purporting to show economic income, the material adds back "interest expense" as a noncash item to cash flow. This add-back can only mean either no interest was really being charged, or cash flow could only be positive by ignoring interest expense. Of further importance to a reasonably prudent taxpayer investigating the soundness of the investment would be the lack of any projection for residual value in the promotional materials. Petitioner, however, did not question these discrepancies. Furthermore, petitioner never entered into a lease with respect to the equipment, and he did not authorize anyone else to enter into a lease with a user on his behalf. Nevertheless, petitioner reported $ 4,230 as rental income for the 2 days that he owned the equipment in 1983. Despite these peculiarities, which do not have any apparent explanation in the offering material, petitioner neither received *65 nor requested any documentation of the lease or rental income. Petitioner relied on Ortega for the information. Petitioner cites a number of cases in support of the proposition that the addition to tax for negligence generally is not imposed on a taxpayer who took deductions in good faith in reliance on the advice of a competent tax adviser. E.g., Woodbury v. Commissioner, 49 T.C. 180 (1967); see also Otis v. Commissioner , 73 T.C. 671, 675 (1980), affd. without published opinion 665 F.2d 1053 (9th Cir. 1981). We agree with the proposition but disagree with petitioner's assertion that he relied on a competent tax adviser. Petitioner relied on the promoter of the tax shelter and the promoter's associates and not on any independent tax adviser. Petitioner's authority, therefore, is inapposite. Petitioner also argues that because hundreds of other people invested in the same shelter, petitioner's investment must have been reasonable. The issue, of course, is whether petitioner's tax reporting positions were reasonable. In addition, petitioner argues that because the promoters were fraudulent, petitioner was not negligent. Notwithstanding *66 that others invested in the same tax shelter and that the promoters were fraudulent, petitioner did not investigate the investment, did not consult a competent (or at least independent) tax adviser, and took deductions and credits without determining whether they were allowable. In light of the peculiarities of the offering material's description of the investment and the absence of any lease agreement, petitioner's failure to investigate prior to claiming the deductions and credits was unreasonable. This is not a case in which petitioner was assured of the program's soundness by a long-standing and trusted personal adviser. Compare Davis v. Commissioner, T.C. Memo. 1989-607. Petitioner had a duty to consult with advisers independent of the program or otherwise to investigate the bona fides of the program. Marine v. Commissioner, 92 T.C. 958, 992 (1989). Petitioner's claim for deductions and credits in light of his failure to do so was negligent. Petitioner further argues that respondent has the burden of proof with respect to fraud and did not show what portion of the underpayment was attributable to fraud. Petitioner misunderstands this case. *67 Respondent did not determine the fraud addition with respect to petitioner's return, and respondent has no burden of proof in this case. The fraud addition is not part of this case, and the fact that petitioner may have been defrauded by a promoter does not implicate the fraud addition. Petitioner failed to prove that the additions to tax for negligence should not be imposed. The entire deficiency, after taking into account respondent's concession of petitioner's depreciation expense on his condominium, is attributable to negligence. The next issue is whether petitioner is subject to the addition to tax pursuant to section 6661. Section 6661 provides for an addition to tax equal to 25 percent of the underpayment of tax attributable to a substantial understatement of income tax. [2] Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement of tax is substantial if it exceeds the greater of 10 percent of the amount of tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1). An understatement is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. *68 Woods v. Commissioner, 91 T.C. 88 (1988). On his Federal income tax return for 1983, petitioner reported a tax liability of zero. Because of concessions, the parties will have to determine in the Rule 155 calculation whether petitioner's actual tax liability exceeded $ 5,000 in 1983. If so, the understatement will meet the threshold requirement of section 6661. If a taxpayer has substantial authority for the tax treatment of an item on his return, the understatement is reduced by the amount attributable to such items. Sec. 6661(b)(2)(B)(i). Furthermore, if a taxpayer adequately discloses on his return the relevant facts pertaining to any tax item, the amount of the understatement is reduced by the amount of such items. Sec. 6661(b)(2)(B)(ii). If the tax *69 item is attributable to a tax shelter, however, the amount of understatement may only be reduced where there is substantial authority for the taxpayer's position and the taxpayer reasonably believed his tax treatment of the item was more likely than not the proper treatment. Sec. 6661(b)(2)(C)(i). Respondent contends, and we agree, that the tax items relating to petitioner's HPI investment are tax shelter items. A tax shelter is defined as a partnership, entity, plan, or arrangement whose principal purpose is the avoidance or evasion of Federal income tax. Sec. 6661(b)(2)(C)(ii). The definition of a tax shelter thus directs our analysis to the purpose of the "partnership, entity, plan, or arrangement," rather than to the subjective motivation of the individual investors. Although the principal purpose of a plan may be difficult to ascertain, it is clear that when profit is not one of a plan's possible outcomes (as a reading of the offering material makes clear) and the tax benefits sought are substantial, the plan's principal purpose is tax avoidance or evasion. The HPI offering materials described an investment which offered only tax benefits and no economic profit. The projections *70 also assumed that the equipment was leased to a holistic clinic but did not provide evidence of equipment users. Although the materials promised a residual value for the equipment, they made no projection of this value at all. Petitioner has not proved that the purpose of the HPI program was to produce an economic profit separate from the tax benefits. See Cherin v. Commissioner, 89 T.C. 986 (1987). The HPI program, therefore, was a tax shelter as defined in section 6661(b)(2)(C)(ii). Petitioner again argues that he was a victim of fraud and theft at the hands of an unscrupulous promoter. Petitioner does not argue that he had any legal authority for his position. Indeed, petitioner did not analyze the HPI program in order to have any reasonable belief as to whether his tax treatment was more likely than not the proper treatment. Ferrell v. Commissioner, 90 T.C. 1154, 1205-1206 (1988). We sustain respondent's imposition of the section 6661 addition to tax. Petitioner argues only that he relied on Ortega and his associates for advice. Apparently, petitioner relies on the waiver provision of section 6661(c), which permits respondent to waive *71 any part of the addition to tax based on a showing that the taxpayer had reasonable cause for the understatement and acted in good faith. Respondent did not abuse his discretion by failing to waive the section 6661 addition to tax. See Mailman v. Commissioner, 91 T.C. 1079 (1988). Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 for the year in issue, unless otherwise indicated.↩
2. Respondent determined the section 6661 addition at the 10 percent rate. Although the 25 percent rate applies to additions assessed after October 21, 1986, Pallottini v. Commissioner, 90 T.C. 498 (1988), respondent has not sought to apply the higher rate. We will, therefore, use the 10 percent rate as determined. Horn v. Commissioner, 90 T.C. 908, 943↩ n.21 (1988).